**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONELLE HARRIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Civil Action No. 1:21-cv-09946-GHW-GWG |
| OLD NAVY, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................2

        A.      Harris Worked At Old Navy As A Sales Representative ............................2

III.    LEGAL STANDARD ...........................................................................................3

        A.      Rule 12(b)(1) – Lack Of Subject Matter Jurisdiction.............................3

        B.      Rule 12(b)(6) – Failure To State A Claim...........................................3

IV.     ARGUMENT ........................................................................................................4

        A.      Harris Does Not Have Standing ...............................................................4

                1.      Harris Has Not Plausibly Pled That Any Alleged Late Payment
                        Caused Her Actual Or Concrete Harm ........................................4

                2.      In The Alternative, Harris Does Not Have Standing To Represent
                        The Putative Class As Defined .....................................................8

        B.      Harris Cannot Assert A Frequency Of Pay Claim................................10

                1.      Section 191 Does Not Contain An Express Private Right Of Action ......10

                2.      There Is No Basis To Infer A Private Right of Action............................10

                        i.      Harris Is Not Part Of The Class Of Workers For Whose
                                Particular Benefit The Statute Was Enacted................................11

                        ii.     Recognizing A Private Right Does Not Promote Legislative
                                Intent ...........................................................................13

                        iii.    Creation Of A Private Right Is Not Consistent With The
                                Legislative Scheme ...............................................................15

                3.      Vega Is Wrongly Decided And Not Entitled To Any Deference ............19

V.      CONCLUSION ..................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accosta v. Lorelei Events Grp.*,
   No. 17-cv-7804, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022)..................................................22

*Adler v. Penn Credit Corp.*,
   No. 19-cv-7084, 2022 WL 744031 (S.D.N.Y. Mar. 11, 2022) ................................................6

*Akridge v. Whole Foods Market Grp., Inc.*,
   No. 20-cv-10900-ER, 2022 WL 955945 (S.D.N.Y. Mar. 30, 2022).......................................9

*Alston v. Microsoft Corp.*,
   No. 08-cv-3547, 2009 WL 1116360 (S.D.N.Y. Apr. 27, 2009)..............................................3

*Arciello v. Cnty. of Nassau*,
   No. 16-cv-3974, 2019 WL 4575145 (E.D.N.Y. Sept. 20, 2019)...........................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................3, 4

*Barber v. Lincoln Nat'l Life Ins. Co.*,
   260 F. Supp. 3d 855 (W.D. Ky. 2017) ..................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................3

*Burgis v. Dep't of Sanitation City of New York*,
   No. 13-cv-1011, 2014 WL 1303447 (S.D.N.Y. Mar. 31, 2014) .............................................4

*Carrier v. Salvation Army*,
   667 N.E.2d 328 (N.Y. 1996) ..............................................................................................11

*Caul v. Petco Animal Supplies, Inc.*,
   2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ..................................................................7, 19

*Coley v. Vanguard Urb. Improvement Ass'n, Inc.*,
   No. 12-cv-5565, 2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) ...........................................22

*Cruz v. TD Bank, N.A.*,
   2 N.E.3d 221 (N.Y. 2013) ............................................................................................11, 15

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ...............................................................................................8

ii

*Epstein v. JPMorgan Chase & Co.*,
No. 13-4744, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014).....................................8

*Francisco v. NY Tex Care, Inc.*,
No. 19-cv-1649, 2022 WL 900603 (E.D.N.Y. Mar. 28, 2022) .................................7

*Grant v. Glob. Aircraft Dispatch, Inc.*,
No. 720074/2019, 2021 WL 6777500 (N.Y. Sup. Ct. Apr. 20, 2021) ...............7, 21

*Harty v. W. Point Realty*,
28 4th 435 (2d Cir. 2022) .....................................................................................6

*Hussain v. Pak. Int'l Airlines Corp.*,
No. 11-cv-9832, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) .............................22

*IKEA U.S. v. Indus. Bd. of Appeals*,
660 N.Y.S.2d 585 (N.Y. App. Div. 1997).............................................................22

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986) ...............................................................................3

*Kawa Orthodontics, LLP v. Secretary, United States Department of the Treasury*,
773 F.3d 243 (11th Cir. 2014) ...........................................................................7, 8

*Kearns v. Cuomo*,
981 F.3d 200 (2d Cir. 2020) ..................................................................................4

*Konkur v. Utica Acad. of Sci. Charter Sch.*,
No. 0008, 2022 WL 397774 (N.Y. Feb. 10, 2022).................................18, 19, 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..............................................................................................4

*Maddison v. Comfort Sys. USA (Syracuse)*,
No. 17-3591, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018)........................................9

*Maddox v. Bank of New York Mellon Trust Co., N.A.*,
19 F.4th 58 (2d Cir. 2021).................................................................................5, 7

*MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*,
861 F.3d 40 (2d Cir. 2017) ...................................................................................7

*Morrison v. Nat'l Australia Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008) ..................................................................................3

*MSPA Claims 1, LLC v. Tenet Fla., Inc.*,
918 F.3d 1312 (11th Cir. 2019) .............................................................................8

*Neitzke v. Williams,*
    490 U.S. 319 (1989) ........................................................................................ 3

*Ortiz v. Ciox Health LLC,*
    179 N.E.3d 635 (N.Y. 2021) ................................................................... 15, 16

*Rajamin v. Deutsche Bank Nat'l. Tr. Co.,*
    757 F.3d 79 (2d Cir. 2014) ............................................................................ 7

*Roach v. T.L. Cannon Corp.,*
    No. 10-0591, 2015 WL 10818750 (N.D.N.Y. Sept. 4, 2015) ........................ 9

*Rosario v. Icon Burger Acquisition LLC d/b/a Smashburger,*
    No. 21-cv-04313 (E.D.N.Y. Jan. 21, 2022), ECF No. 24 ............................. 7

*Schlesinger v. Reservists Comm. to Stop the War,*
    418 U.S. 208 (1974) ........................................................................................ 9

*Sheehy v. Big Flats Cmty. Day,*
    541 N.E.2d 18 (N.Y. 1989) .................................................................... 11, 15

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ........................................................................................ 7

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .......................................................................................... 3

*Strubel v. Comenity Bank,*
    842 F.3d 181 (2d Cir. 2016) .......................................................................... 4

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ........................................................................... 4, 5, 7

*Van v. LLR, Inc.,*
    962 F.3d 1160 (9th Cir. 2020) ....................................................................... 8

*Vega v. CM & Assocs. Constr. Mgmt., LLC,*
    107 N.Y.S.3d 286 (N.Y. App. Div. 2019) ............................................... 19, 20

*Zlotnick v. Equifax Info. Servs.,*
    No. 21-cv-7089, 2022 WL 351996 (E.D.N.Y. Feb. 3, 2022) ......................... 6

**Statutes**

N.Y. Lab. Law § 10 ......................................................................................... 13, 14

N.Y. Lab. Law § 11 .................................................................................... 13, 14, 15

N.Y. Lab. Law § 12 .................................................................................... 13, 14, 15

N.Y. Lab. Law § 191 ...............................................................................*passim*

N.Y. Lab. Law § 196 ..................................................................................17

N.Y. Lab. Law § 198 ...............................................................................*passim*

**Rules**

Fed. R. Civ. P. 12 .......................................................................................3

Fed. R. Civ. P. 23 .......................................................................................9

Fed. R. Civ. P. 56 .......................................................................................3

N.Y. C.P.L.R. § 901 ...................................................................................6

**Other Authorities**

*Request for Opinion Frequency of* Payment — Labor Law § 191, N.Y. Dep't. of
    Labor, Off. of Gen. Couns. Op. RO07-0041 (May 8, 2007) ...................................16

Information About Filing a Claim dated March 2021,
    available at https://dol.ny.gov/system/files/documents/2021/03/ls223.2.pdf.........17

Labor Standards Complaint Form dated March 2021,
    available at https://dol.ny.gov/system/files/documents/2021/03/ls223.pdf.......17, 18

Defendant Old Navy, LLC, ("Defendant" or "Old Navy"), by and through its attorneys

Morgan, Lewis & Bockius LLP, respectfully submits this Memorandum of Law in Support of its

Motion to Dismiss the Amended Class Action Complaint ("Complaint" or "Compl.") (Dkt. 14)

filed by Plaintiff Jonelle Harris ("Harris") ("Plaintiff" or "Harris") pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## I.      INTRODUCTION

Harris does not allege that Old Navy failed to properly pay her overtime, wrongfully

deduced her wages, or has otherwise not paid her for all hours worked.  Instead, Harris and a

putative class of alleged "Hourly Workers" ask the Court to award them a substantial penalty

equal to 100% of their wages, even though they received every cent they are owed, because Old

Navy paid them bi-weekly instead of weekly.  Harris asserts that Old Navy violated a procedural

provision in the New York Labor Law ("NYLL"), which requires employers to pay "manual

workers" on a weekly basis.  Despite being given the opportunity to amend her Complaint to

address the pleading deficiencies, Harris' Complaint still fails as a matter of law for multiple

reasons.

First, Harris does not have Article III standing to assert a frequency of pay claim under

NYLL § 191 ("Section 191") in federal court, because she still has not alleged how being paid

bi-weekly instead of once a week (as Section 191 allegedly requires) actually caused her

concrete and actual harm.  To the contrary, Harris generically asserts that she lost the

hypothetical value of her money and hypothesizes about things she was "unable" to do.

Second, in the alternative, Harris lacks standing to the extent that she purports to

represent a class of employees for a period of time that pre- and post- dates her employment.

Harris cannot allege that she was harmed during a period when she was not employed by Old

Navy and is thus not a member of the class that she purports to represent.

1

Finally, Harris does not have a cause of action to assert a frequency of pay claim under Section 191.  The text of Section 191 does not provide a private cause of action entitling employees to recover penalties and Courts have held that no such private right should be inferred where, as is the case here, all wages have been paid.  There is likewise no basis to infer such a right into Section 191, because the history of the applicable statutory scheme, including its emphasis on administrative enforcement, makes clear that the only remedies available for frequency of pay violations are civil penalties recoverable by the Commissioner of Labor.

Harris' new allegations do not cure the defects in Old Navy's original pre-motion conference letter (Dkt. 15).  Accordingly, Old Navy respectfully submits that its Motion to Dismiss should be granted in its entirety and Harris' Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND[1]

### A.    Harris Worked At Old Navy As A Sales Representative.

Harris worked at Old Navy as a Sales Representative in Harlem, New York from approximately 2018 to January 2021.  Compl. ¶¶ 1, 30.  Harris alleges that during her employment she was paid bi-weekly and that, as a result, she was hypothetically "denied the time-value of her money" and was "unable to invest, save, or purchase utilizing the wages she earned."  Compl. ¶¶ 32-33, 40.

---

[1] The facts taken from the Complaint are assumed to be true solely for purposes of this Motion.  Old Navy denies the allegations, including that its employees are "manual workers" as defined by NYLL and that it engaged in any illegal or wrongful conduct.

III.     **LEGAL STANDARD**

    A.     **Rule 12(b)(1) – Lack Of Subject Matter Jurisdiction.**

    Claims – like the one asserted by Harris here – must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate them.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).  On a motion for lack of jurisdiction, the court may consider matters outside the pleadings, such as affidavits, documents, and testimony.  *See, e.g.*, *Alston v. Microsoft Corp.,* No. 08-cv-3547, 2009 WL 1116360, at *3 (S.D.N.Y. Apr. 27, 2009).  Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Rule 56.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  Harris bears the ultimate burden of demonstrating the court's jurisdiction to hear her claim by a preponderance of evidence.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).

    B.     **Rule 12(b)(6) – Failure To State A Claim.**

    The Federal Rules mandate dismissal of a complaint where, as here, the plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of Rule 12(b)(6) is to "streamline[] litigation by dispensing with needless discovery and fact-finding" and to eliminate baseless claims.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

    To survive a motion to dismiss, Harris must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted)*.*  A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant

3

is liable for the misconduct alleged." *Id.* Mere "'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor can Harris avoid her pleading burden simply because she purports to bring her case as a class action. *See e.g., Burgis v. Dep't of Sanitation City of New York*, No. 13-cv-1011, 2014 WL 1303447, at *4-7 (S.D.N.Y. Mar. 31, 2014) (granting defendants' 12(b)(6) motion to dismiss putative class claim for failure to plausibly state a claim).

## IV.   ARGUMENT

### A.   Harris Does Not Have Standing.

#### 1.   Harris Has Not Plausibly Pled That Any Alleged Late Payment Caused Her Actual Or Concrete Harm.

Harris' Complaint must be dismissed because she does not (and cannot) show that Old Navy's alleged violation of the NYLL actually caused her concrete harm. Article III only enables federal courts to hear "cases" and "controversies." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020). A case or controversy exists only when a plaintiff has suffered (1) an injury in fact; (2) that is traceable to the defendant; and (3) that is redressable by a court ruling in the plaintiff's favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Harris does not satisfy the first requirement: She has not shown an injury in fact, *i.e.*, "the invasion of a legally protected interest" that is "concrete and particularized and actual or imminent." *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quotation and citation omitted).

The Supreme Court recently confirmed in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), that a statutory violation by itself is not sufficient to give rise to an injury in fact for Article III standing. Specifically, the Court explained that "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* at 2205. It further held that "[o]nly those

4

plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. A concrete injury is one that is real, not abstract or hypothetical.

Shortly thereafter, in *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 61 (2d Cir. 2021), the Second Circuit applied *TransUnion* to a case brought under a New York law that is analogous to the NYLL time-of-payment law at issue in this case. In *Maddox,* the plaintiffs sought statutory penalties (like Harris does here) because the defendant filed a satisfaction of mortgage after the time allotted by statute. *Id*. The plaintiffs argued that the defendant's late filing could harm them, but none of those harms had materialized before suit. *Id*. The Second Circuit rejected this argument and found that the *Maddox* plaintiffs lacked standing because they did not show how the defendant's late filing concretely harmed them. *Id*. at 64. Thus, consistent with *TransUnion*, plaintiffs' possible or hypothetical injuries were "incapable of giving rise to Article III standing." *Id*. at 65.

*Maddox* demonstrates that, when a plaintiff seeks statutory penalties for a defendant's alleged violation of a timing requirement in a New York statute (as Harris does with Section 191 here), the plaintiff must demonstrate how the defendant's lateness actually and concretely harmed her. Here, notwithstanding two bites at the apple, Harris has not met her burden.

Harris has not alleged how being paid bi-weekly instead of once a week (as Section 191 allegedly requires) caused her concrete and actual harm beyond the statutory violation itself. Instead, Harris offers only generic, conclusory, and hypothetical suggestions about what she might have done with the allegedly late funds. For example, Harris claims that she was "unable to invest and save" in undisclosed investments and "unable…to purchase" unidentified items. Compl. ¶¶ 32-33, 40. Nowhere does Harris allege a specific plan for her money (e.g., how she

5

would have invested her wages, what she would have invested in, or in what way her investments would have increased the value of her funds).  At most, Harris' allegations simply describe things that she may or may not have done with her wages.  Harris' harm is, therefore, purely hypothetical and insufficient to establish Article III standing.  *See Harty v. W. Point Realty*, 28 4th 435, 443 (2d Cir. 2022) (plaintiff's possible courses of action do not constitute Article III injuries-in-fact; such potential injuries only become "actual" and "imminent" ones when accompanied by a "description of [the] concrete plans" the plaintiff planned to take, or would have taken); *Adler v. Penn Credit Corp.,* No. 19-cv-7084, 2022 WL 744031, at *7, 10 (S.D.N.Y. Mar. 11, 2022) (a plaintiff claiming lost use of money-type injuries must allege what "specific plans [he had] to invest his money"); *Zlotnick v. Equifax Info. Servs.*, No. 21-cv-7089, 2022 WL 351996, at *2-3 (E.D.N.Y. Feb. 3, 2022) (plaintiff failed to plausibly allege standing in FCRA action because his allegations were couched in terms of "possible" injury, failing to describe any actual "concrete, particularized injury").

Indeed, despite being given the opportunity to amend her Complaint, Harris does not allege that she suffered *any* harm, which explains why she demands *statutory penalties* instead of *compensatory damages*.  Harris, therefore, alleges a bare procedural violation—the failure to be paid at the time prescribed by statute—divorced from any actual and concrete harm to them.  *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 50 (2d Cir. 2017), *as amended* (Aug. 2, 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016));  Such an allegation is not sufficient to confer Article III standing and Harris' claim must be dismissed.[2]

---

[2] In addition, as a practical matter, Harris should not be permitted to evade New York's prohibition against recovery of statutory penalties on a class-wide basis by forum shopping and filing her claims in federal court.  *See* N.Y. Civil Practice Law and Rules § 901(b) (prohibiting recovery of a statutory penalty in a class action unless specifically authorized by statute); *Grant v. Glob. Aircraft Dispatch, Inc.*, No. 720074/2019, 2021 WL 6777500, at *3 (N.Y. Sup. Ct. Apr. 20, 2021) (dismissing plaintiffs' Section 191 pay frequency class claims because plaintiff "cannot seek liquidated damages for the putative class, as damages are deemed penalties under New York Law.").

*See Francisco v. NY Tex Care, Inc.*, No. 19-cv-1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28,

2022) (dismissing NYLL claims alleging failure to provide proper wage notices and wage

statements where "neither Plaintiff nor the record demonstrate how [the] technical [NYLL]

violations led to either a tangible injury or something akin to a traditional cause of action" and

explaining that "the Supreme Court has made clear that a statutory violation alone [such as the

technical NYLL violations], without a tangible injury … does not constitute an injury that can be

recognized by the federal courts"); Order, *Rosario v. Icon Burger Acquisition LLC d/b/a

Smashburger,* No. 21-cv-04313 (E.D.N.Y. Jan. 21, 2022), ECF No. 24 (plaintiff's "barebones"

Amended Complaint which simply alleged – the same way the Complaint does here – that

"Defendant failed to pay [p]laintiff and the Class on a timely basis as required by the NYLL"

was insufficient under *TransUnion* and *Maddox* to conclude that plaintiff "actually suffered the

sort of harm that would entitle him to relief").

    Harris may cite to *Caul v. Petco Animal Supplies, Inc.* in support of her argument that she

has standing to enforce the time-of-payment law.  *See Caul v. Petco Animal Supplies, Inc.*, 2021

WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021).  *Caul* does not save Harris' claim and should not

be followed by this Court for multiple reasons.  As a preliminary matter, the decision in *Caul*

came down before the Second Circuit decided *Maddox*, which (as described above) is analogous

to the claim at issue here.  Second, the *Caul* district court relied on the economic theory that a

dollar today is worth more than a dollar tomorrow and that, therefore, any alleged late payment

of wages is a concrete harm.  *Id.*  For Article III standing, however, an injury must be real, not

theoretical.  *See Rajamin v. Deutsche Bank Nat'l. Tr. Co.*, 757 F.3d 79, 85 (2d Cir. 2014)

(finding no standing where alleged injuries were "conjectural or hypothetical") (quotation and

citation omitted).  In *Kawa Orthodontics, LLP v. Secretary, United States Department of the*

*Treasury*, 773 F.3d 243, 246 (11th Cir. 2014), the Eleventh Circuit rejected a plaintiff's time value of money basis for standing because the plaintiff hadn't claimed any such injury, nor sought compensation for such an injury.  *See id.* (noting that the plaintiff failed to "allege that [it] had specific plans to invest its money into an interest-bearing asset").  Where courts have held that the time-value of money is sufficient to demonstrate an injury in fact, they have generally done so either when the plaintiffs specifically demanded lost interest as compensatory damages or when the alleged injuries had analogs in tort law.  *See MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (claim for interest); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (seeking interest); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) (finding the plaintiffs asserted injury analogous to the torts of replevin and conversion).  Neither is the case here.  Harris is not seeking interest as compensatory damages, nor is her claim analogous to any common law torts.  Accordingly, Harris has not alleged a concrete and actual harm sufficient to confer Article III standing and her claim must be dismissed.  *See Epstein v. JPMorgan Chase & Co.*, No. 13-4744, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) (declining to infer injury based on the lost "opportunity to use and/or earn interest" on an uncredited amount where, as here, the plaintiff failed to "make this claim in his papers"); *Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 862 (W.D. Ky. 2017), *aff'd*, 722 F. App'x 470 (6th Cir. 2018) ("If all the complaint does is imply that *any* time a person is denied money he or she suffers an injury from being denied the opportunity to grow that money, then the complaint has not stated an injury with sufficient particularity.").

      2.    <u>In The Alternative, Harris Does Not Have Standing To Represent The Putative Class As Defined.</u>

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all

members of the class he represents." *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974); *see also Akridge v. Whole Foods Market Grp., Inc.*, No. 20-cv-10900-ER, 2022 WL 955945, at *5 (S.D.N.Y. Mar. 30, 2022) ("in a putative class action, the named plaintiff must allege that he was personally injured by defendants' conduct."). Harris does not (and cannot) allege that she has standing to represent the putative class.

Harris purports to represent a class of individuals who work or worked as "Hourly Workers" for Old Navy between April 10, 2015 through final judgment. Compl. ¶ 20. Harris, however, concedes that she only worked for Old Navy from "in or around 2018 through approximately January 2021." Compl. ¶¶ 9. 30. Thus, by her own admission, the purported class spans approximately three (3) years before and at least one (1) year after Harris' employment with Old Navy.

Harris cannot claim to be injured by Old Navy's alleged actions before or after her employment. Harris, therefore, only has standing to represent a class from 2018 until January 2021, and the Court should strike any class claims beyond that period. *See e.g., Maddison v. Comfort Sys. USA (Syracuse)*, No. 17-3591, 2018 WL 679477, at *8 (N.D.N.Y. Feb. 1, 2018) (limiting class to only the dates that the Named Plaintiffs were employed, because "Plaintiff cannot claim to have been injured…before… his dates of employment" and "Plaintiff only has standing to represent the Rule 23 and FLSA Classes regarding injuries that the putative classes incurred between [dates Named Plaintiff was employed]"); *Roach v. T.L. Cannon Corp.*, No. 10-0591, 2015 WL 10818750, at *6 (N.D.N.Y. Sept. 4, 2015) (explaining that plaintiffs do not have standing to sue as class representatives for claims that pre-date their employment, and limiting temporal scope of class to dates named plaintiffs were employed).

B.    **Harris Cannot Assert A Frequency Of Pay Claim.**

Harris admits that she was paid in full for all work that she performed for Old Navy.

Nevertheless, Harris contends that she is entitled to a substantial, draconian penalty because Old

Navy allegedly failed to pay her and an undefined class of "Hourly Workers" in accordance with

NYLL § 191(1)(a), which requires that "manual workers" be paid weekly.  NYLL § 191(1)(a).

Harris' claim must be dismissed because, for more than 100 years, only the New York

Commissioner of Labor has had the right to enforce violations of Section 191.

1.    Section 191 Does Not Contain An Express Private Right Of Action.

Section 191 establishes a weekly pay frequency rule for manual workers.  Specifically,

NYLL Section 191(1)(a) states in relevant part:

> a. Manual worker.--- (i) A manual worker shall be paid weekly and not later than seven
> calendar days after the end of the week in which the wages are earned; provided however
> that a manual worker employed by an employer authorized by the commissioner pursuant
> to subparagraph (ii) of this paragraph or by a non-profitmaking organization shall be paid
> in accordance with the agreed terms of employment, but not less frequently than semi-
> monthly.

NYLL § 191(1)(a).

Section 191 does not, and has never, given employees a private right of action to enforce

the timing of payment requirement.  *See* NYLL § 191.  If such a right exists (it does not), one

must look elsewhere.

2.    There Is No Basis To Infer A Private Right of Action.

As a preliminary matter, there is no Second Circuit or New York State Court of Appeals

ruling on this issue.  If, and when, the appellate courts of final determination do rule, they will

not infer a private right into Section 191 or Section 198 for a timing of pay violation.

In deciding whether, under New York law, to infer a private right of action, courts must

evaluate the following factors:  "(1) whether the plaintiff is one of the class for whose particular

benefit the statute was enacted; (2) whether recognition of a private right of action would

promote the legislative purpose; and (3) whether creation of such a right would be consistent

with the legislative scheme." *Sheehy v. Big Flats Cmty. Day*, 541 N.E.2d 18, 20 (N.Y. 1989).

The third factor is the "most critical," *Carrier v. Salvation Army*, 667 N.E.2d 328, 329 (N.Y.

1996), because a private right of action cannot be inferred "where the Legislature specifically

considered and expressly provided for enforcement mechanisms in the statute itself." *Cruz v. TD

Bank, N.A.*, 2 N.E.3d 221, 226 (N.Y. 2013) (quotation and citation omitted).  In New York, a

statute contains an implied right of action "only if a legislative intent to create such a right of

action is fairly implied in the statutory provisions and their legislative history." *Id.* (quotation

and citation omitted). That is certainly not the case here.

> i.   *Harris Is Not Part Of The Class Of Workers For Whose Particular
>      Benefit The Statute Was Enacted.*

Assuming, as Old Navy must for the purpose of this motion, that Harris is a "manual

worker" (a contention that Old Navy vigorously denies), Harris is not part of the class of workers

for whose particular benefit the timing-of-pay statute was enacted.  The underlying justification

for weekly pay for manual workers is not tied to any need for manual workers to receive

payment of their wages faster than any other categories of employees in New York.  Rather, it is

to protect a class of workers from being deprived wages in the event that their employer became

insolvent.  This is evidenced by the undisputed fact that Section 191 expressly empowers the

Commissioner to grant – and the Commissioner routinely does grant – *large* employers like Old

Navy exemptions from having to pay manual workers on a weekly basis based primarily on the

financial solvency of the employer.  NYLL § 191(1)(a)(ii).  For example, Commissioner will

grant an exemption "if the employer furnishes satisfactory proof to the commissioner of its

continuing ability to meet its payroll responsibilities." *Id.*  In making that determination, the

Commissioner considers the factors related to the financial health and solvency of the employer, such as (i) the employer's history of meeting payroll responsibilities in New York, (ii) proof of the employer's workers' compensation and disability coverage, (iii) proof that there are no outstanding warrants in New York against the employer for failing to remit state personal income tax withholdings or unemployment insurance contributions, and (iv) proof that the employer has a computerized record keeping system. *Id.* Notably, the Commission does not consider factors related to the employees in making the determination, such as whether the employees are low wage earners or how receiving wages less frequently might impact or harm the employees. *Id.*

The focus on protecting employees from financially insolvent employers (unlike the Plaintiff in this case who was employed by Old Navy, a multinational employer), is also consistent with the legislative history of Section 191. Indeed, when considering whether to amend NYLL Section 191 in 1989 to authorize certain employers to pay manual workers less frequently than weekly, the New York State Department of Economic Development focused on the benefit that an exemption would provide to "employers with demonstrated financial stability" "without sacrificing workers' security." Specifically, the Deputy Commissioner and Counsel stated:

> The provision in the bill which would allow semi-monthly wage payments to manual workers by certain ***employers with demonstrated financial stability, provides a valuable benefit to large employers***. The shift from weekly to semi-monthly payroll periods would ease a significant and costly administrative burden for employers ***without sacrificing workers' security***. The Commissioner of Labor can rescind the authorization for less than weekly pay periods, as circumstances require.

Bill Jacket, L. 1989, chap. 487, Ten-Day Bill Memorandum, New York State Department of Economic Development (emphasis added). Thus, in passing and subsequently amending Section 191, the legislature intended to protect only those workers who are vulnerable to not receiving their wages from financially insolvent or unstable employers. That is not the case here.

Furthermore, the fact that the Commissioner is empowered to create an exception for large employers like Old Navy demonstrates that employees are *not* harmed in any concrete or actual way when they are paid less frequently than weekly.  Thus, allowing Harris to bring a cause of action to recover draconian penalties for alleged untimely payment of wages (as Plaintiff suggests is proper here), does nothing to further the New York State Department of Economic Development's explicit intent to protect "workers' security."

The Plaintiff in this case is, therefore, merely not the type of employees who this statute was designed to protect.

ii.     *Recognizing A Private Right Does Not Promote Legislative Intent.*

NYLL § 191(1)(a), which dates back to the 1890s, establishes that "manual workers" should be paid weekly and that the Commissioner of Labor has sole discretion over whether to pursue violations of that requirement.   In its 1897 version – formerly known as NYLL § 10 and subsequently as NYLL § 11 – the law required the following:

> **When wages are to be paid**.  Every corporation or joint stock association, or person carrying on the business thereof by lease or otherwise, shall pay weekly to each employee the wages earned by him to a day not more than six days prior to the date of such payment.
>
> But every person or corporation operating a steam surface railroad shall, on or before the twentieth day of each month, pay the employees thereof the wages earned by them during the preceding calendar month.

L. 1897, ch. 415, Article I, § 10.

Similarly, NYLL § 198 – formerly known as NYLL § 11 and subsequently as NYLL § 12 – was also amended in 1897 to provide the following penalties:

> **Penalty for violation of preceding sections**.  If a corporation or joint-stock association, its lessee or other person carrying on the business thereof, shall fail to pay the wages of an employee, as provided in this article, it shall forfeit to the people of the state the sum of fifty dollars for each failure, to be recovered by the factory inspector in his name of office in a civil action; but an action shall not be maintained therefor, unless the factory inspector

shall have given to the employer at least ten days' written notice that such an action will be brought if the wages due are not sooner paid as provided in this article.

On the trial of such action, such corporation or association shall not be allowed to set up any defense, other than a valid assignment of such wages, a valid set-off against the same, or the absence of such employee from his regular place of labor at the time of payment, or an actual tender to such employee at the time of the payment of the wages so earned by him, or a breach of contract by such employee or a denial of the employment.

L. 1897, ch. 415, Article I, § 11.

Thus, in its original form, the only remedies available under the explicit statutory text were civil penalties recoverable by the "factory inspector" (i.e., the Commissioner). *Id.* There was no private right for employees to recover.

The two statutory provisions were amended in tandem numerous times over the next 65+ years. Notwithstanding the amendments, a few things remained consistent: First, former NYLL §§ 10 and 11 (now Section 191) consistently used the word "wages" in the title of the provision. For example, the statute was originally entitled "**When wages are to be paid**." L. 1890, ch. 388, § 1; L. 1921, ch. 50. Second, former NYLL §§ 11 and 12 (now Section 198) consistently used the word "**penalty**" and "**civil penalty**" in the title of the provision. For example, the statute was originally entitled "**Penalty for violation of proceeding sections**" and was amended to "**Civil Penalty**." L. 1897, ch. 415, Article I, § 11; L. 1934, ch. 745, Section 1, § 198. Third, the only remedy available under former NYLL §§ 11 and 12 (now Section 198) was a penalty recoverable by the Commissioner. For example, up until 1965, the provision only permitted recovery of a civil penalty "to the people of the state" "to be recovered by the commissioner in a civil action." L. 1965, ch. 354, Section 1, § 198.

In 1966, as a part of a general recodification of the Labor Law, the Legislature created a new "Article 6" and deliberately modified the preexisting statutory scheme. In revamping the Labor Code, the Legislature created what are presently Sections 191, 197, and 198. L. 1966,

14

Chap. 548, Article 6.  Specifically, the Legislature moved the requirement for weekly wage payments to a new, Section 191, and for the first time, retitled it without a reference to "wages." *Id.* at § 191.  The new provision, entitled "Frequency of Payments" set forth requirements for frequency of payments for the following four categories of employees:  (1) manual workers; (2) railroad workers; (3) commission salesman; and (4) clerical and all other workers.  *Id.*  Similarly, the Legislature moved NYLL §§ 11 and 12 to Section 197 and retained the heading "Civil Penalty" and created a new Section 198 entitled "Costs, remedies."  L. 1966, Chap. 548, Article 6, §§ 197-198.  With this change, the new Section 198 provided an employee with the right to institute a "wage claim" for the first time.  Despite multiple amendments since 1966, this same limitation in Section 198 exists in the statute today:  **employees can only institute an action in courts "upon a wage claim" and can only recover in such a wage claim action for an "underpayment."**  *See* NYLL § 198 ("In any action instituted in the courts upon a wage claim by an employee….the court shall allow such employee to recover the full amount of any underpayment").

The Legislature's 1966 recodification and change in statutory nomenclature (from "Payment of Wages" to "Frequency of Payments") is significant and indicates an intent to treat pay frequency claims as non-wage claims that are not actionable under Section 198.

       *iii.*    *Creation Of A Private Right Is Not Consistent With The Legislative Scheme.*

The New York Court of Appeals has consistently reiterated that "[t]he third factor is the most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others – *a choice that should be respected by the courts*."  *Ortiz v. Ciox Health LLC*, 179 N.E.3d 635, 639 (N.Y. 2021) (emphasis added); *Cruz* 2 N.E.3d at 226; *Sheehy*, 541 N.E.2d 18.  The Court of Appeals has likewise made clear that the

15

"presence of alternative enforcement mechanisms is frequently determinative," even where the alternative mechanism provides a narrower remedy than plaintiffs desire and where a private right "could act as a further deterrent." *Ortiz*, 179 N.E.3d at 639 (quotation and citation omitted).

The New York Legislature vested exclusive responsibility to police violations of the "manual worker" weekly pay provision in the Commissioner of the New York State Department Of Labor ("NYS DOL").  For instance, consistent with the legislative scheme's focus on administrative enforcement, the Commissioner may authorize large employers to pay their manual workers less frequently than weekly.  Section 218 entitled "Violations of certain provisions; civil penalties," likewise empowers the Commissioner (and no one else) to recover civil penalties ranging from $1,000 to $3,000 in an administrative proceeding.  Guidance from the NYS DOL confirms that the administrative enforcement mechanism and civil penalties are the appropriate vehicle and remedies for timing of pay violations.  For example, the NYS DOL opined that the sanction for a § 191(1)(a) weekly pay violation is a civil penalty imposed by the Commissioner under NYLL § 218.  *See Request for Opinion Frequency of* Payment — Labor Law § 191, N.Y. Dep't. of Labor, Off. of Gen. Couns. Op. RO07-0041 (May 8, 2007) ("Violations of certain provisions; civil penalties;" providing that DOL Commissioner may assess against an employer "liquidated damages in the amount of one hundred percent of unpaid wages" for violating a provision of this Article); *Sheng Wang Zhang and Century Diner Buffet, Inc.*, Docket No. PR 12-180, at 13 (July 13, 2016) (N.Y. Industrial Board of Appeals affirming

$1,000 civil penalty violation of N.Y. Lab. Law § 191(1)(a) for failing to pay wages weekly to manual workers).[3]

  Furthermore, NYLL § 196 mandates that the Commissioner investigate and attempt to adjust equitably "controversies between employers and employees relating to this article."  And, NYLL § 196-a establishes a complaint mechanism for aggrieved employees to file complaints with the Commissioner for late payments and empowers the Commissioner to investigate said complaints.  To that end, the Commissioner has established such a complaint mechanism that makes clear that the NYS DOL also classifies employees' untimely wage payments complaints as "non-wage complaints."  To illustrate, there are instructions and information about filing a claim with Labor Standards on the NYS DOL's publicly accessible website.  Those instructions distinguish between "wage claims" and "non-wage complaints" and classify allegations regarding "timely payment of wages" as "non-wage complaints."  *See* Information About Filing a Claim dated March 2021, publicly available at

https://dol.ny.gov/system/files/documents/2021/03/ls223.2.pdf, at 2 ("**Make a non-wage complaint** if your employer failed to … timely payment of wages[.]") (emphasis in original).  Consistent with its position that frequency of pay violations are "non-wage complaints," the NY DOL Labor Standards Complaint Form (also publicly available on the NYS DOL's website) categorizes failure to "pay wages on time" as a "Non-Wage Complaint."  *See* Labor Standards Complaint Form dated March 2021, publicly available at

https://dol.ny.gov/system/files/documents/2021/03/ls223.pdf at 5 ("**Part 8.   Non-Wage Complaint.**  Check those that apply if you want to make a non-wage related complaint…37h.

---

[3] Given the large size of the penalty, it also makes sense from a practical perspective to leave enforcement of Section 191 violations solely in the discretion of the NYS DOL, which can balance the costs and benefits of seeking the penalty.

Pay wages on time") (emphasis in original).  In contrast, claims for unpaid wages and unpaid

minimum wages or overtime claims (i.e., wage claims for underpayment of wages) are addressed

in separate sections of the NYS DOL Complaint Form.  *Id*. at 3-4.  In light of the statutory

history and the NYS DOL's opinion, frequency of pay claims (such as the one asserted by

Harris), are "non-wage claims" that are not enforceable via Section 198's private right, which is

limited to "wage claim[s]."  *See* NYLL § 198 (1-a) (setting forth the remedies "[i]n any action

instituted in the courts upon a *wage claim* by an employee . . . in which the employee prevails")

(emphasis added).

History thus makes clear the Legislature had the opportunity to create a private right of

action when it amended the statute in 1966 (and many times thereafter), but did not.  The

significance of that omission cannot be overstated.  As the Court of Appeals recently reiterated:

"Where the legislature intended for an article 6 provision to be enforced individually, it expressly

provided a private right of action."  *Konkur v. Utica Acad. of Sci. Charter Sch.*, No. 0008, 2022

WL 397774, at *3 (N.Y. Feb. 10, 2022) (pointing to amendments made by the legislature to the

NYLL as recently as 2015 to include private rights of action in certain provisions).  Accordingly,

no private right should be inferred because the legislature had the opportunity to provide one, but

chose instead to preserve the pre-existing regime of an administrative enforcement for non-wage,

frequency of pay claims.

* * * * *

Simply put, there is not a shred of evidence that the Legislature intended to create a

private right of action to enforce Section 191, or to make Section 198 a vehicle for penalizing

untimely payments.  It, therefore, would be inappropriate to infer a private right of action into the NYLL for the claim asserted by Plaintiff.[4]

        3.        <u>*Vega* Is Wrongly Decided And Not Entitled To Any Deference.</u>

As explained *supra*, the NYLL does not contain an express right of action allowing Harris to recover the exponential damages that she asserts here for mere untimely payment of wages.  Old Navy, nevertheless, recognizes that some courts have recently held otherwise or used NYLL Section 198(1-a) to create an implied private right of action for NYLL Section 191 frequency of pay violations.  *See e.g., Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 287-89 (N.Y. App. Div. 2019) (recognizing an express and implied private right of action under NYLL § 191) ("*Vega*"); *Caul*, 2021 WL 4407856, at *3  (explaining that it must follow *Vega* and collecting cases finding the same).  These cases are not controlling, are wrongly decided, and are not entitled to deference from this Court.

*Vega's* express private right holding is predicated on two incorrect conclusions:  (1) "The remedies provided by section 198(1-a) apply to violations of article 6 and section 191(1)(a) is part of article 6"; and (2) an untimely payment of wages constitutes an underpayment of wages. *Vega,* 107 N.Y.S.3d at 287-89 (internal quotations and citations omitted).

The New York State Court of Appeals recently issued an opinion finding that NYLL Section 198-b, which prohibits wage kickbacks, does not contain a private right of action. *Konkur*, 2022 WL 397774.  The Court acknowledged in its opinion that Section 198-b is codified in Article 6, but nevertheless stated that "section 198-b contains no express private right of

---

[4] It would also be inappropriate to infer a private right into Sections 191 or 198 – as Harris suggests – as a practical matter.  Doing so would cause a flood of litigation brought by people who were paid the correct amount of wages, and who otherwise have a remedy for alleged frequency of pay violations through the NY DOL.  Allowing those claims would be a waste of judicial resources, an unwarranted penalty on employers who otherwise paid their employees all wages due, and a windfall for plaintiffs' attorneys lucky enough to discover such a violation.

Case 1:21-cv-09946-GHW-GWG   Document 24   Filed 04/14/22   Page 26 of 29

action[.]"  *Id.*, at *1.  The Court further opined that where "the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action."  *Id.*, at *3 (*citing* to the NYLL 2010 amendment to include an express private right in Section 195 and a 2015 amendment to include the same in Section 194).  The mere fact that a statutory provision is codified in Article 6 is, therefore, not sufficient in the Court of Appeals' view to find an express right of action.  Thus, the first basis for the intermediate court's decision in *Vega* is improper.

The legislative text, intent, and history undermines *Vega*'s second rationale for finding an express private right of action.  When the predecessor of Section 191 was enacted the 1890s, it was one section of an act, which (in another section of the act) gave the Commissioner of Labor *alone* the right to enforce the act's terms and to seek penalties for violations.  That is how the act remained until 1966, when the legislature for the first time gave employees a right to file a "wage claim."  That amendment did not authorize suits for violations of Section 191 for multiple reasons.  First, the Legislature purposefully retitled Section 191 to "Frequency of Payment," making clear that the provision did not constitute a "wage claim" enforceable by employees.  Second, a "wage claim" is a claim for wages, not a claim for penalties.  The Plaintiff here does not rely on any alleged statutory right to file "wage claims," but rather, as explained above, she is seeking penalties.  Third, the statute maintained a robust administrative enforcement mechanism that was always (and still is) available to any allegedly aggrieved employees.

In finding that there was a private right of action, the Court in *Vega* ignored the statutory history, relied upon a different statutory provision (Section 198(a-1)), and erroneously determined that an untimely payment is an underpayment.  Section 198 describes remedies available for violations of the NYLL.  However, the penalties that Harris demands here are

available only for ***underpayment*** of wages, not the ***untimely*** payment of wages.  Specifically,

NYLL § 198(1-a) states, in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover ***the full amount of any underpayment***, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its ***underpayment of wages*** was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due[.]

NYLL §198(1-a)(emphasis added).

The statute's protections are explicit:  it provides remedies for ***underpaid*** wages, not wages that are paid at the proper amount, but in untimely fashion.  Underpayment and untimely payment are two distinct concepts.  Underpayment means "to pay less than what is normal or required" and refers to the amount paid.  *See* Merriam-Webster definition of "underpayment."  In contrast, untimely is a synonym for late.  *See* Merriam-Webster and Black's Law Dictionary definition of "untimely."

Consistent with ordinary use of the terms, courts in this Circuit and in New York State have correctly held that employees have a private right of action under Section 198 only to recover for ***underpayments*** (i.e., circumstances where an employee did not receive his or her complete wages owed for time worked).  In other words, there is no private right of action for an employee who only alleges a mere ***untimely*** pay violation (e.g., where manual workers are paid bi-weekly instead of weekly), without an accompanying underpayment in the wages received. *See, e.g., Grant*, 2021 WL 6777500, at *3 ("the payment of all wages in full, albeit on a bi-weekly basis, does not constitute an underpayment that would trigger an employee's right to commence a lawsuit to recover the damages set forth in that section of the Labor Law, [and] plaintiff does not have a private right action under NYLL §§ 191(1)(a)(i) and 198(1-a) for a

frequency of pay violation.") (internal quotations and citations omitted); *Arciello v. Cnty. of Nassau*, No. 16-cv-3974, 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019) (dismissing Section 191 claim because Section 198 does not provide a remedy for the failure to timely pay wages and noting that "[c]ourts in the Southern District of New York and in this District have opined that the NYLL may not contain…a remedy for the failure to timely pay overtime wages"); *Coley v. Vanguard Urb. Improvement Ass'n, Inc.*, No. 12-cv-5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) ("The NYLL does not appear to provide" private recovery for Section 191 violations) (quotation and citation omitted); *Hussain v. Pak. Int'l Airlines Corp.*, No. 11-cv-9832, 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) (dismissing frequency of pay claim because "[the New York Labor Law] contains no provision for private recovery for violations of its provisions regarding frequency of payment. . . ."); *cf. IKEA U.S. v. Indus. Bd. of Appeals*, 660 N.Y.S.2d 585, 586 (N.Y. App. Div. 1997) (NYS DOL Commissioner assessed only a fine for violation of Section 191; there was no finding that the wages paid biweekly was an "underpayment" and liquidated damages were not assessed); *Accosta v. Lorelei Events Grp.*, No. 17-cv-7804, 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (explaining that the NYLL's "liquidated damages provision is geared to afford relief for unpaid wages, not for late-paid wages" and that the "NYLL does not appear to provide a …remedy" for late wage payments) (quotation and citation omitted).

Accordingly, given that Harris only alleges an untimely payment of her wages, not an underpayment, there is no private right of action and her claim should be dismissed.

## V.    **CONCLUSION**

For all of the foregoing reasons, Old Navy respectfully requests that the Court grant its Motion to Dismiss, together with such other and further relief as this Court deems appropriate, and dismiss Harris' Complaint with prejudice.

22

Dated: April 14, 2022                    Respectfully submitted,

                                         MORGAN, LEWIS & BOCKIUS LLP
                                         By: */s/ Ira G. Rosenstein*
                                             Ira G. Rosenstein
                                             Nicole M. Zito
                                             Elisa C. Egonu
                                             101 Park Avenue
                                             New York, NY 10178-0060
                                             Phone: (212) 309-6700
                                             Fax: (212) 309-6001

                                         *Attorneys for Defendant Old Navy, LLC.*